## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

ASTRAZENECA PHARMACEUTICALS LP,
_Plaintiff_,

    _v._

DREW H. WRIGLEY, in his official capacity as the Attorney General of North Dakota;

    _and_

Carolyn Bodell, Tanya L. Schmidt, Tyler G. Lannoye, Shane R. Wendel, Kevin J. Oberlander, Diane Halvorson, and Ron Horner, in their official capacities as Members of the North Dakota Board of Pharmacy; and MARK J. HARDY, in his official capacity as Executive Director of the North Dakota Board of Pharmacy,

                    _Defendants._

**No: 1:25-cv-00182-DMT-CRH**

## <u>ADDITIONAL BRIEF</u>

### INTRODUCTION

As AstraZeneca has explained, Defendants' motion for judgment on the pleadings should be denied: H.B. 1473 violates the Supremacy Clause, Contracts Clause, and Takings Clause of the U.S. Constitution. At minimum, AstraZeneca is entitled to prove its allegations through the evidence it has obtained via discovery. Defendants' motion attempts to shield this evidence from this Court's view—an effort that other courts in this Circuit have rightly rejected. _See AstraZeneca Pharms. LP v. McClain_, 2025 WL 4092197 (E.D. Ark. Sept. 30, 2025).

The issues that the Court identified in its Order for Additional Briefing, ECF No. 66 ("Order"), do not change that result. AstraZeneca has plausibly alleged that it has standing to challenge H.B. 1473, as nearly every other court confronting an analogous law has agreed: AstraZeneca is the object of the law and faces a threat of enforcement. The law compels

AstraZeneca "to provide access to 340B discounts for unlimited contract pharmacy sales" it would not otherwise provide, imposing an economic injury of approximately $500,000 per month. Am. Compl. ¶ 95, ECF No. 11. AstraZeneca's complaint also specifically accounts for North Dakota's unique pharmacy ownership regulations, *id.* ¶ 39, which do not affect AstraZeneca's allegations about the operation and effect of H.B. 1473.

Importantly, AstraZeneca's case is still at the pleading stage, *not* summary judgment; fact discovery closed on March 19, 2026. AstraZeneca conducted three depositions of covered entities and obtained documents from still more. That evidence confirms the allegations in AstraZeneca's complaint, and AstraZeneca should be permitted to prove its case at summary judgment.

## ARGUMENT

**I.    ASTRAZENECA HAS STANDING TO CHALLENGE H.B. 1473**

AstraZeneca has standing to challenge H.B. 1473 because it has plausibly alleged that its contract pharmacy policy violates the law, that there is a threat Defendants will enforce the law against it, and that the law requires AstraZeneca to "offer 340B-discounted pricing for sales at an unlimited number of contract pharmacies," causing it to "lose approximately $500,000 per month as a result." Am. Compl. ¶¶ 4, 95. Those allegations satisfy Article III's requirement at the pleadings stage.

**a.** "A party [] need not expose itself to arrest or prosecution in order to challenge a criminal statute." *St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006). Instead, when "a plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute, courts have found standing to challenge the statute, even absent a specific threat of enforcement." *Gray v. City of Valley Park*, 567 F.3d 976, 985 (8th Cir. 2009). "A plaintiff who alleges a threat of prosecution that 'is not imaginary or wholly speculative' has standing to challenge the statute." *Gaertner*, 439 F.3d at 485 (quoting *Babbitt v. United Farm Workers Nat.*

*Union*, 442 U.S. 289, 302 (1979)). Even more, "[w]hen a statute is challenged by a party who is a *target or object* of the statute's prohibitions, there is ordinarily little question that the statute has caused him injury." *Id.* (emphasis added) (cleaned up).

These rules require upholding standing here. There is no dispute that AstraZeneca, and manufacturers like it, are the "object" of H.B. 1473's prohibitions. *Id.* Indeed, the law expressly criminalizes conduct undertaken by such "manufacturer[s]." N.D.C.C. § 43-15.3-08(3). As Defendant Dr. Mark Hardy, testifying in his capacity as Executive Director of the North Dakota State Board of Pharmacy, explained at a House committee hearing on H.B. 1473: "This bill … provide[s] safeguards for 340B covered entities and contract pharmacies on *actions of the manufacturer* to limit or restrict access to the 340B drug discount program." *Testimony of Mark J. Hardy, PharmD, Executive Director, N.D. State Bd. of Pharmacy, on H.B. 1473 Before the H. Indus., Bus. & Lab. Comm.*, 69th Legis. Assemb. (N.D. Feb. 10, 2025), https://bit.ly/4sTE2Q1 (emphasis added). Defendants' motion for judgment on the pleadings confirms this view, arguing—based on their mischaracterization of AstraZeneca's policy—that H.B. 1473 "protects the contractual relationships … between North Dakota's covered entities and their contract pharmacies from interference *by drug manufacturers*." Mem. in Supp. of MJOP at 16, ECF No. 30-1 ("Mem.") (emphasis added). The law is thus a direct response to contract pharmacy policies like AstraZeneca's adopted to preserve the integrity of the 340B program. *See* Am. Compl. ¶ 86.

There can also be no doubt that H.B. 1473 affects AstraZeneca. The law forces AstraZeneca "to provide access to 340B discounts for unlimited contract pharmacy sales of its patented products." *Id.* ¶ 95. AstraZeneca alleges that "HB 1473 will cause substantial economic harm," amounting to "approximately $500,000 per month." *Id.* And Defendants *agree* that H.B. 1473 will decrease "manufacturers' profits" by expanding covered entities' ability to "buy drugs

at a discount, get reimbursed by insurers for the drug's full price, and pocket the difference." Mem. at 1, 4 (citation omitted). That outcome "substantially interferes with AstraZeneca's opportunity to take advantage of the benefits of exclusivity under the federal patent law." Am. Compl. ¶ 95. It is more than sufficient to confer standing. *See Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 116 (2025). Indeed, AstraZeneca's economic injury is a "straightforward" injury-in-fact. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) (citation omitted).

Though North Dakota has not enforced its unconstitutional statute against AstraZeneca during the pendency of this litigation, that does not change the result. AstraZeneca need not await an enforcement action to vindicate its rights. What matters instead is that "the statute clearly applies to the plaintiff, and the plaintiff has stated a desire not to comply with its mandate." *Gray*, 567 F.3d at 985 (quotation marks omitted). That is the case here: "Under AstraZeneca's contract pharmacy policy, AstraZeneca has ceased offering 340B discounts for drugs sold at an unlimited number of contract pharmacies." Am. Compl. ¶ 57.

Just as important, Defendants have not disclaimed their authority and intention to enforce H.B. 1473. "The credibility of [a] threat" of enforcement is sufficiently "substantial"—rather than merely "imaginary or speculative"—where governmental defendants "have not disavowed enforcement" of the challenged law. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164-65 (2014) (quoting *Babbitt*, 442 U.S. at 298); *see Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) ("The Phelps-Ropers may have an objective fear of prosecution [under the challenged city ordinance] since the city has not disavowed its intention to enforce it."). That is the case here.

Indeed, Defendants have affirmatively signaled that they *do* intend to enforce H.B. 1473. In their motion for judgment on the pleadings, Defendants explained that they "have no intention

of enforcing H.B. 1473's *claims-data restriction* to prohibit conditions that are required for a manufacturer's participation in the Rebate Model Pilot Program." Mem. at 26 (emphasis added). But that limited representation about forbearing enforcement of the claims data restriction indicates that Defendants *do* intend to enforce the law against AstraZeneca in all *other* respects. As Dr. Hardy stated in the hearing on H.B. 1473: "the Board of Pharmacy would be tasked with enforcing the provisions on the licensed manufacturers and virtual manufactures conducting business in the state. We are willing to take on this responsibility." Testimony of Mark J. Hardy, *supra.*

Nor is AstraZeneca's injury under H.B. 1473 self-inflicted. AstraZeneca voluntarily participates in Section 340B, *not* H.B. 1473. "Section 340B does not require" AstraZeneca to offer 340B discounts for sales at "an unlimited number of contract pharmacies." *Sanofi Aventis v. HHS*, 58 F.4th 696, 703 (3d Cir. 2023). Instead, that requirement comes solely from H.B. 1473, which imposes obligations that AstraZeneca would not have to satisfy in the absence of the State's law. To avoid those state-law obligations, AstraZeneca would have to exit the 340B program altogether, as well as Medicare and Medicaid. Not only would that be financially catastrophic for AstraZeneca, it would deprive needy patients in those massive programs of access to necessary medicines. AstraZeneca's injuries therefore are *not* the product of its voluntary participation in Section 340B, but of North Dakota's decision to impose *additional* (and involuntary) obligations on any manufacturer who participates in the program—and in Medicare and Medicaid.

**b.** The cases referenced in the Court's Order confirm the point. In *Novartis Pharmaceuticals Corp. v. Frey*, 2025 WL 2813787 (D. Me. Sept. 23, 2025), two pharmaceutical manufacturers challenged a Maine contract pharmacy law resembling the North Dakota law at issue here. Maine argued that the manufacturers had "not established that they have standing to

pursue their claims because they are allegedly harmed only when a covered entity claims entitlement to more discount drugs than were dispensed to patients of the covered entity," which the State argued would result only from "a violation of the provisions of 340B and not a consequence of Maine law." *Id.* at \*6. But the court quickly rejected that argument. It explained that "Plaintiffs have demonstrated an intent to follow their policies restricting delivery to contract pharmacies and that following the policies would likely result in state sanctions, as the State has not represented that it would not enforce the Maine statute with its attendant penalties if Plaintiffs followed their policies after the effective date of the statute." *Id.* That was all the plaintiffs needed to show at the preliminary injunction stage. *Id.* The circumstances here are analogous: AstraZeneca has alleged that maintaining its policy would likely result in sanctions, which Defendants have not disclaimed. Indeed, AstraZeneca's burden at the pleadings stage is even *lower* than the plaintiffs' burden to support a preliminary injunction in *Frey*. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (requiring "clear showing" of standing at preliminary injunction stage).

A similar conclusion was reached in *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271 (M.D. Tenn. June 30, 2025), and the follow-on decision, *AbbVie Inc. v. Skrmetti*, 2026 WL 542712 (M.D. Tenn. Feb. 26, 2026). The State there raised a series of arguments related to whether the manufacturers faced a credible threat of enforcement for maintaining their contract pharmacy policies. *Skrmetti*, 2025 WL 1805271, at \*7-8. Nearly all failed. The court explained that the manufacturers' one-contract-pharmacy policies were "directly at odds with the" Tennessee Law, which prohibited "placing any limitations on the number or location of the delivery of drugs to contract pharmacies" or "imposing any conditions on delivery related to the provision of claims data or inventory management systems." *Id.* at \*9. The court also found it "particularly relevant … that the law was evidently passed specifically for the purpose of invalidating policies

like" those of the plaintiff-manufacturers, and the State had "not disavowed an intent to enforce it." *Id.* The court thus found the manufacturers had standing for their claims, except for their claim challenging a provision that contained a "grandfather clause" exempting them from compliance with one subsection of the statute. *Id.* Here, North Dakota's law contains no such exception.

The outlier decision in *AbbVie Inc. v. Bailey*, 2025 WL 1918948 (E.D. Mo. July 11, 2025), does not compel a different result. The court there concluded that AbbVie's injuries were not traceable to the Missouri law at issue there because AbbVie claimed "only one" type of injury: the "*diversion*" of 340B-discounted drugs "to contract pharmacies *through the replenishment model*." *Id.* at *6. The court reasoned that "section 340B *prohibits*" diversion, and the Missouri law did not "require" diversion "either." *Id.* at *7. AbbVie's alleged injury was therefore traceable only to Section 340B and to "illegal transfers of 340B drugs through the replenishment model"—not to Missouri's law. *Id.* at 8. That narrow framing was the court's sole basis for granting the motion to dismiss, and AbbVie has since amended its complaint. Am. Compl., *AbbVie Inc. v. Bailey*, 24-cv-0996 (E.D. Mo. Aug. 20, 2025), ECF No. 101.

Even in Missouri, AstraZeneca's claims are different. Indeed, the Missouri defendants *did not* move to dismiss AstraZeneca's complaint for lack of standing in AstraZeneca's separate challenge to the Missouri law. Mem. in Supp. of Mot. to Dismiss, *Astrazenca Pharms. LP v. Bailey*, No. 24-cv-4143 (W.D. Mo. Oct. 3, 2024), ECF No. 31. And here, AstraZeneca does not challenge diversion through the replenishment model, nor does it challenge covered entities' use of the model in North Dakota. AstraZeneca uses the model only to *illustrate* how H.B. 1473 actually operates. Nor has AstraZeneca accused any covered entity of diversion. AstraZeneca's allegations respecting title and agency are further evidence of H.B. 1473's operation and effect.

Rather than target replenishment or diversion, AstraZeneca challenges H.B. 1473's core

restrictions, which "extend[] Section 340B's price caps beyond the scope of the federal program to reach unlimited contract pharmacy sales" and inhibit AstraZeneca's ability to "obtain[] the data necessary to identify unlawful diversion of 340B-priced drugs." Am. Compl. ¶¶ 5, 8. Those obligations cost "approximately $500,000 per month." *Id.* ¶ 95. Nothing in *Bailey* addresses that type of economic injury, which is a quintessential injury-in-fact. Indeed, any other conclusion would suggest—plainly incorrectly—that H.B. 1473 has no effect on AstraZeneca *at all*.

Finally, although standing typically is not contested in challenges to state contract pharmacy laws, still more courts have rejected standing defenses in similar cases. In *AstraZeneca Pharmaceuticals LP v. Weiser*, for instance, the court concluded AstraZeneca had standing because it alleged that Colorado's law made "participation in Section 340B more costly through its requirement to make Section 340B discounted drugs available at unlimited contract pharmacies," which would cost "approximately $600,000 per month." 2025 WL 3653161, at *5 (D. Colo. Dec. 17, 2025). "[M]aking participation in Section 340B more costly is a 'concrete and particularized' injury that is fairly traceable to" state contract pharmacy laws. *Id.* A court addressing Mississippi's contract pharmacy law reached a similar conclusion. *See PhRMA v. Fitch*, 2024 WL 3277365, at *5-6 (S.D. Miss. July 1, 2024).

In sum, AstraZeneca properly alleges that it is the direct object of H.B. 1473; that there is a non-speculative threat that Defendants will enforce the law against it; and that complying with the law will cost AstraZeneca millions of dollars per year. At the pleading stage, that more than suffices to establish standing.

## II.    NORTH DAKOTA'S PHARMACY OWNERSHIP LAWS DO NOT CHANGE ASTRAZENECA'S ALLEGATIONS

AstraZeneca's amended complaint accounts for North Dakota's unique pharmacy ownership laws, which do not affect the complaint's allegations. At this stage of the litigation—

which in AstraZeneca's case is still at the pleadings phase—the Court must accept AstraZeneca's allegations as true, and ask only whether it has stated a plausible claim for relief. *See Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016). It has. Among other things, AstraZeneca plausibly alleges that North Dakota covered entities use the replenishment model, Am. Compl. ¶¶ 27-48; that their contract pharmacies take title to 340B-discounted drugs, *id.* ¶¶ 44-45, 79-80; and that their contract pharmacies act as independent contractors of covered entities, *id.* ¶¶ 45, 81. Based on similar allegations, other courts in this Circuit have denied motions for judgment on the pleadings. *McClain*, 2025 WL 4092197, at *7. The same result is warranted here.

Indeed, the Court's Order asks the parties to "brief *or* give additional evidence specific to North Dakota." Order at 3 (emphasis added). Unlike other plaintiffs, AstraZeneca's case is at the pleadings stage, where the record is limited to "materials that necessarily are embraced by the pleadings or that are part of the public record." *Mickelson*, 823 F.3d at 923. AstraZeneca opposes converting Defendants' motion for judgment on the pleadings to a motion for summary judgment, *see* Fed. R. Civ. P. 56(d), because full summary judgment briefing based on the complete discovery record will confirm that AstraZeneca's allegations are accurate.

First, AstraZeneca alleges that North Dakota covered entities use the replenishment model. Under that model, their contract pharmacies take title to 340B-discounted drugs upon accepting delivery of the products. The complaint thus explains that "covered entities rarely, if ever, 'maintain title'" to 340B-priced drugs "through dispensing." Am. Compl. ¶ 45 (quoting 75 Fed. Reg. 10,277, 10,273). "Instead, replenishment drugs are almost always delivered directly to the contract pharmacy, without a covered entity ever taking physical possession of the product, and title is almost always transferred to the contract pharmacy upon receipt." *Id.* The pharmacy "takes title to the drug and puts it in the pharmacy's general inventory, where it can be distributed to *any*

9

pharmacy customer—whether 340B eligible or not." *Id.* ¶ 44. "Thus, in practice, title to 340B drugs is transferred to the contract pharmacy rather than maintained by the covered entity." *Id.* ¶ 80.

The complaint also alleges that contract pharmacies in North Dakota act as independent contractors of the State's covered entities, not their agents. The complaint explains that "contract pharmacies are typically independent contractors with respect to the acquisition and sale of 340B drugs, as stated in their agreements with covered entities. Indeed, replenishment sales are often placed on behalf of a covered entity without the covered entity's review or prior approval—or even without the covered entity's awareness." *Id.* ¶ 45. AstraZeneca based these allegations on "[f]actual records developed following the Eighth Circuit's decision" in *PhRMA*, "as well as publicly available information," all of which showed "that contract pharmacies are usually independent contractors, not agents, with respect to the acquisition and sale of 340B drugs." *Id.* ¶ 81. Defendants have agreed that "this Court must accept [these allegations] as true in resolving Defendants' motion for judgment on the pleadings." Mem. at 38.

To be sure, as this Court observed, North Dakota has unique "laws on pharmacy ownership." Order at 3. Yet nothing about those laws affects the way that 340B contract pharmacy transactions operate in the State. Indeed, in other litigation in other States, AstraZeneca has obtained discovery regarding contract pharmacy arrangements with pharmacies of all types— including with small, independent, in-state pharmacies. Even for those independent pharmacies, "covered entities do not maintain title to 340B drugs" and "[c]ontract pharmacies are typically independent contractors, not agents of covered entities, with respect to the acquisition and sale of 340B drugs." *See, e.g.*, Br. ISO Mot. Summ. J. at 27, 32, *AstraZeneca Pharms. LP v. McClain*, (E.D. Ark. Sept. 3, 2025), ECF No. 132. The common denominator in terms of title and agency is

10

the "replenishment model," *see* Am. Compl. ¶¶ 44-45, which is "the dominant model used by covered entities" in North Dakota, *id.* ¶ 33.

AstraZeneca's complaint also addresses North Dakota's unique pharmacy ownership laws directly. As AstraZeneca has alleged, "pharmacies owned by pharmacy benefit managers (PBMs), along with other large pharmacies, account for nearly two-thirds of North Dakota covered entities' contract pharmacy arrangements." Am. Compl. ¶ 39. "And North Dakota covered entities have hundreds of contract pharmacy arrangements with pharmacies outside the state, which are not subject to North Dakota's unique pharmacy ownership requirements." *Id.* "As a result, these arrangements enable large and PBM-owned pharmacies to profiteer off of North Dakota's contract pharmacy law without acceding to the State's other requirements." *Id.*

Moreover, discovery in this case will confirm that North Dakota covered entities relinquish title to 340B-discounted drugs and partner with contract pharmacies as independent contractors. This Court has already implicitly recognized that AstraZeneca should be permitted to present at summary judgment the evidence it has uncovered in discovery. Before filing its motion for judgment on the pleadings, Defendants argued that the Court should "postpon[e] discovery" because, in their view, AstraZeneca's "constitutional arguments can be resolved" on the law alone. Scheduling Order at 4-5, ECF No. 23. AstraZeneca disagreed, responding that discovery was necessary to resolve the *precise* issues that the Court has raised here:

> [T]he Parties have *already* disagreed among themselves about two factual premises underlying the Eighth Circuit's decision in *PhRMA v. McClain*: whether covered entities "maintain legal title to the 340B drugs" and whether a contract pharmacy "becomes an agent of the covered entity." 95 F.4th 1136, 1144, 1142 (8th Cir. 2024). Discovery can provide evidence regarding all of those issues, which the Court may deem relevant or even crucial to properly resolving this case.

*Id.* at 2-3. The Court sided with AstraZeneca, concluding that it would "not stay discovery pending disposition of the anticipated motion for judgment on the pleadings." *Id.* at 12.

11

The Order for additional briefing confirms the wisdom of the Court's decision not to stay discovery. The Order asks the parties in the summary judgment posture to "give additional evidence specific to North Dakota," in particular on whether "North Dakota pharmacies act as agents for covered entities or if they keep title to the medications," to provide "more information on the structure of the system in North Dakota." Order at 3. That request underscores that AstraZeneca should be allowed to proceed to summary judgment, so that it can present the Court with the evidence it has adduced in discovery—evidence that confirms AstraZeneca's allegations.

## CONCLUSION

North Dakota's motion for judgment on the pleadings should be denied.

*REMAINDER OF PAGE INTENTIONALLY BLANK*

Dated: March 23, 2026

Respectfully submitted,

_____/s/ Joel Fremstad_____
Joel Fremstad (ND ID 05541)
FREMSTAD LAW FIRM
P.O. Box 3143
Fargo, North Dakota 58108-3143
(701) 478-7620 telephone
joel@fremstadlaw.com

AND

Allon Kedem*
Jeffrey L. Handwerker*
Samuel I. Ferenc*
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000 telephone
(202) 942-5999 fax
allon.kedem@arnoldporter.com
jeffrey.handwerker@arnoldporter.com
sam.ferenc@arnoldporter.com

Carmela T. Romeo*
ARNOLD & PORTER
 KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000 telephone
(212) 836-8689 fax
carmela.romeo@arnoldporter.com

*Admitted pro hac vice*

*Attorneys for Plaintiff AstraZeneca Pharmaceuticals LP*

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

/s/ *Joel Fremstad*

JOEL FREMSTAD
*Counsel for Plaintiff AstraZeneca Pharmaceuticals LP*

14